## Mascaro Estate

*Carringer, Stewart & Swanson,* for accountant.

*James L. Foreman,* for exceptant.

FLICK, P. J., July 9, 1962. — The court has been asked to adjudicate and decree distribution of the balance of this decedent's estate as shown by the first and final account, and to pass upon an exception to the account and a claim against the estate filed by one of the heirs.

The balance for distribution shown in the account is $4,118.98. The claim is by one of decedent's children for taxes paid on the real estate of which he died siezed, totaling $352.92. The exception to the first and final account is for failure to allow this claim.

William F. Mascaro died, testate, on August 10, 1935, leaving to survive him his widow, and 11 children. His will, probated August 14, 1935, provided for

payment of debts and funeral expenses and then disposes of his property as follows:

"Second. I give, devise and bequeath unto my wife, Augusta Mascaro, the use of all my property of every nature and kind and wheresoever situate and being at the time of my death, to have and use the same as she thinks advisable, with the right to sell and dispose of the same in event she thinks advisable. If any of my property and estate remains after her death then the same is hereby willed, devised and bequeathed to my children, sons and daughters, share and share alike."

Decedent's wife, Augusta Mascaro, and his son, Frank Mascaro, were named executors. The son renounced his right to act and the widow was appointed. She filed inheritance tax schedules and fulfilled all her duties as executrix. She died in 1948. Decedent's property consisted mainly of a house and lot and furnishings in Tionesta, and the widow continued to live there. One of the children, Helen Simon, lived with her. They paid taxes and made repairs to the property. The utility bills were paid mainly by Helen Simon.

Augusta Mascaro died July 8, 1948. One of the 11 children, Theresa Mascaro Bargerstock, died on December 12, 1947, predeceasing her mother. The other ten children survived. One of them, Peter W. Mascaro, is confined to a mental hospital, the Springfield State Hospital, in Sykesville, Maryland.

After the mother's death, the ten surviving children arrived at no agreement for a sale of the property or for the manner in which it should be used. For a time it stood vacant. Taxes for 1949 and 1950 were paid by three of the daughters. The property was broken into. Still the brothers and sisters arrived at no agreement as to what to do with the place.

One daughter, Frances Ball, wife of Joseph Ball, decided that she and her family would use the property during the summer months. They lived in Oil City.

They found the house in poor condition. They repaired the door and began to live in the property during July and August, and on some weekends. They occupied the property during the summer and for some weekends for a period of five years. They said that when they moved in the place it was not in fit shape to rent. They fixed it up, painted, installed a lavatory and made necessary repairs. They worked on the lawn and had a large vegetable garden. No attempt was made to show the monetary worth of the repairs and improvements.

Testimony at the distribution hearing showed that the property could have been rented for $25 a month; that it was easy to find a tenant for a riverside property in this locality and that an offer had actually been made to pay $25 a month rent. It was suggested to Mrs. Ball by one of her sisters that the house could be rented, but Mrs. Ball said she wanted it for July and August and the others were free to use it at any other time.

No rent was ever paid by Frances Ball or her husband. They did pay taxes on the property to keep it from being sold at tax sale in 1959. The taxes they paid are as follows:

| "Year | Amount |
|-------|--------|
| 1951 | 54.35 |
| 1952 | 48.10 |
| 1953 | 59.20 |
| 1954 | · 50.65 |
| 1955 | 47.21 |
| 1956 · | 46.98 |
| 1957 | 46.43 |
| Total | $352.92" |

The property was taken by the Commonwealth of Pennsylvania in connection with the construction of the new bridge at Tionesta, for compensation of

$4,800. In order to have someone legally entitled to accept the compensation, Frank W. Mascaro was appointed administrator d. b. n. c. t. a. of the estate of William F. Mascaro. The $4,800 was paid to him by the Commonwealth. He reimbursed himself for taxes for 1958 and 1959, which he had advanced as administrator, totalling $103.12, also for expenses of $78; he paid himself an administrator's fee of $240 and the attorneys for the estate $200; the clerk's and notary fees totaled $73. The total of these expenses is $684.12, leaving a balance of $4,115.88, as shown by the first and final account.

Mr. and Mrs. Ball filed a claim with the administrator for the taxes advanced by them, totaling $352.92. This he refused to pay on the ground that the Balls had occupied the property rent free for five years when it could have been rented for $25 a month. He testified, also, that after the Balls left the property the furniture was all gone and the house was in a very run down condition, like a pig pen.

In this proceeding the court must first determine the devolution of the property of William F. Mascaro. The provisions of the will are those customarily used by a man possessing a modest estate, consisting chiefly of his homestead, when he wishes to give his wife the right to have full control of the property and use it to exhaustion if need be, but if any is unexpended at her death he wishes his children to inherit whatever may be left.

The Supreme Court of Pennsylvania has interpreted such language to create a life estate in the widow, with power to consume, and a vested remainder in the children. In Reeder's Estate, 254 Pa. 85, the will left decedent's property to his wife, "to use as she sees fit, for which no bonds shall be required or given, and if, at her death anything shall be left, that remaining property shall be divided equally between my three

children . . ." One child married and died during the lifetime of the widow of testator. The court said, page 86: "That she took a vested remainder was the correct conclusion of the court below. It vested upon the death of her father, liable to be divested by the widow's consumption if she should have chosen to exercise the power given her to consume." The case of Reeder's Estate was quoted with approval in a later case in which the language of the will was similar, to-wit: Walker's Estate, 277 Pa. 444. There the court also held that the remainder given to the children vested on the death of testator.

Under this rule of law, upon the death of William F. Mascaro, each of his 11 children acquired a vested remainder of an undivided one-eleventh interest in his real estate. As his widow did not sell or dispose of the property during her lifetime, each of the ten children who survived her became the owner of an undivided one-eleventh interest therein, and each is now entitled to one-eleventh of the net proceeds of the condemnation of said property by the Commonwealth of Pennsylvania, now in the hands of the administrator c. t. a. d. b. n.

As to the remaining undivided one-eleventh interest, the situation is not so clear. The child who predeceased her mother, Theresa Mascaro Bargerstock, died intestate, leaving no issue but survived by her husband, William O. Bargerstock. Under the Intestate Act of June 7, 1917, P.L. 429 (the Act of April 24, 1947, P.L. 80, was not effective when Theresa died), the surviving spouse was entitled to real or personal estate, or both to the aggregate value of $5,000. "By the intestate Act of 1917, supra, as amended, a surviving spouse takes *an estate of inheritance* in both real and personal property. Consequently, a surviving spouse is a *statutory heir* of the estate of the other": Barnard Estate, 351 Pa. 313, 315.

The Intestate Act provides a seven year limitation for claims against personal estate but no limit for a claim for a share in real property. The claim of William O. Bargerstock as surviving husband was about five times the value of his wife's undivided one-eleventh interest in the William F. Mascaro property and he therefore had a right to her entire undivided one-eleventh interest in said property. It has been held that the share to which the surviving spouse is entitled vests absolutely as an inheritance and therefore is not lost by the fact that the surviving husband did not assert his claim during his lifetime. See Gilbert's Estate, 227 Pa. 648; Murray's Estate, 27 Dist. R. 104; Desmond's Estate, 28 Dist. R. 231; Murphy's Estate, 19 D. & C. 343.

Therefore, the claim of William O. Bargerstock for the undivided one-eleventh share of his wife, Theresa Mascaro Bargerstock, may still be asserted by his personal representative or his heirs. According to the record, the parents of William O. Bargerstock predeceased him and his brothers and a sister also predeceased him, leaving no issue. In Venango County, the home county of the Bargerstocks, no proceedings have been commenced in regard to the estate of either of them. It is not known whether William O. Bargerstock was survived by any aunts, uncles, or cousins who could inherit from him under the Intestate Act of 1947, 20 PS §1.3 (5). In default of any kindred who could inherit from him, his interest passes to the Commonwealth of Pennsylvania.

For these reasons, the administrator will be directed to pay the one-eleventh share of Theresa Mascaro Bargerstock to the clerk of the Orphans' Court of Forest County, to be held until the right to such share in the heirs of William O. Bargerstock, or the Commonwealth of Pennsylvania, is shown.

Another of the one-eleventh shares cannot be paid directly to the child of William F. Mascaro who is entitled thereto. This is the share of Peter W. Mascaro. In regard to him a letter from the financial agent of the Springfield State Hospital, a mental hospital in Sykesville, Maryland, to the attorneys for the administrator, was placed in evidence. The letter states that Peter W. Mascaro is confined to the hospital. It also states; "No Committee has been appointed for this patient. However, Dr. Robert E. Gardner, the Superintendent, acting in his capacity as Attorney-in-Fact can accept the patient's inheritance. Any monies received by the Superintendent will be deposited in the patient's name in the bank at Springfield State Hospital, pending his release from the hospital."

The administrator c. t. a. d. b. n. is therefore directed to pay over the one-eleventh share of the net balance for distribution in his hands, which is the property of Peter W. Mascaro, to Dr. Robert E. Gardner, attorney-in fact for Peter W. Mascaro, at the Springfield State Hospital in Sykesville, Maryland.

The final matter for determination is the exception to the first and final account, filed by Frances Ball, by reason of the fact that the administrator failed to reimburse her for taxes paid on the real estate owned by the children of William F. Mascaro. Also her claim for the amount of such taxes, $352.92.

The administrator was correct on the law in refusing to reimburse Frances Ball. In the case of Collins v. Emerich, decided in the U. S. District Court for the Western District of Pennsylvania, 94 F. Supp. 245, one tenant in common brought suit against his co-tenants to recover the amount of delinquent taxes which he paid on the property owned in common. Defendant's motion to dismiss the suit was granted. The court said: "The instant motion to dismiss poses the question whether, under the law of Pennsyl-

vania, a tenant in common gains a lien on the undivided interests of other tenants in common by paying the full amount of delinquent taxes. This question was squarely answered in re Lohr's Estate, 1938, 132 Pa. Super. 125, 200 A. 135, where the court decided that no such lien arises. It was pointed out in the Lohr's Estate opinion that the Pennsylvania statutes give a tenant in common ample opportunity to protect his own interest by paying merely his share of the tax due; in paying the shares of the taxes owed by others, he 'was a volunteer, and contribution was not available to him under the facts in this case.' 125 Pa. Super. at page 129, 200 A. at page 136. Lohr's Estate is still the law of Pennsylvania. See Patterson v. Warwick, 1949, 165 Pa. Super. 424, 430, 68 A. 2d 396, 399."

In Lohr's Estate, supra, four children and the daughter of a deceased child inherited real estate from their mother and were owners thereof as tenants in common. The land was sold in partition proceedings and an auditor appointed to make distribution of the fund realized. One of the children had paid taxes to keep the property from being sold at tax sale, and he sought contribution from his co-tenants out of the fund realized from sale of the property. The Superior Court held that he was a volunteer as to all except his own share of the taxes and was entitled to no reimbursement for the monies so paid. The court noted that the co-tenant who paid the taxes had a statutory right (72 PS §56617) to pay his own share of the taxes and thus to prevent a tax sale of his undivided interest. Every joint tenant or tenant in common has such a statutory right. The court said, at page 129: "There was no joint obligation upon the tenants in common to pay the taxes, and appellant was not required at any time, as one of the tenants in common, to pay the whole tax for each year in order to protect his undivided interest. Appellant was a volunteer, and contribution

was not available to him under the facts in this case."

As the law is very clear that Frances Ball can not have contribution from the others for the taxes advanced by her or her husband, she has no claim on the funds in the hands of the administrator. Therefore, her exception must be dismissed and the claim filed by her must be dismissed.

In fairness to the parties the court feels it is necessary to comment on some matters not directly involved in this proceeding. Undoubtedly the Commonwealth of Pennsylvania preferred to pay the compensation for taking the Mascaro property by condemnation to one of the 11 or more owners rather than to pay the proper share to each owner.

One of the 11 owners was deceased and those who acquired her interest were unknown. One of the ten living tenants in common was confined in a mental hospital. Faced with these problems, the Commonwealth indulged in the fiction of reviving the estate of William F. Mascaro and requiring Frank W. Mascaro to be appointed administrator c. t. a. d. b. n., so that settlement could be made with him. The administrator would then take over the responsibility of distribution, as he is doing in this proceeding.

In fact, the estate of William F. Mascaro could not be revived. There was nothing to revive. The real estate once owned by him was owned by his children and the heirs of one deceased child, as tenants in common. When Frank W. Mascaro had himself appointed administrator c. t. a. d. b. n., as a prerequisite to payment by the Commonwealth, he became a self-appointed trustee for himself and the other tenants in common. The trust res is the money due from the Commonwealth. After the money was paid to him, he was bound to make distribution to the parties entitled thereto. He is, of course, entitled to reasonable compensation and expenses.

. He is also entitled to reimbursement for the 1958 and 1959 taxes paid by him after his appointment as administrator. These taxes were liens on the premises at the time of settlement and they had to be paid as part of the settlement. Frank W. Mascaro was appointed administrator on March 14, 1960. He paid the 1958 taxes to the county treasurer on March 26, and the 1959 taxes to the tax collector on March 28, 1960, the day he received payment from the Commonwealth. As trustee he was under a duty to pay the taxes in order to carry out his primary obligation to protect the trust res. If he had not advanced the money, the Commonwealth would have had the right to withhold the sum required to discharge the tax liens.

Thus the administrator was in a much different position when he paid the 1958 and 1959 taxes than was Frances Ball when she paid the taxes to keep the property from going to tax sale in 1959. As administrator (trustee), he was under a duty to pay the taxes as part of the settlement with the Commonwealth, and he is entitled to reimbursement. When Mrs. Ball paid the taxes she was under no duty to do so; she had the statutory right to pay her own share of the taxes and prevent sale of her interest in the property; when she paid more than her own share she was a volunteer and under the law she is not entitled to reimbursement.

If Frances Ball feels that the law is unfair to her, she might well consider the fact that under the evidence her brothers and sisters could require her to pay into the fund ten-elevenths of rental of at least $250 ($25 a month for July and August for five years). There are many cases holding that when one tenant in common is in possession of the property, he is liable for the fair rental value thereof, although he does not deny the same right to the other tenants in common; and it is immaterial that none of the other owners objected or tried to move in. See Huffman Estate (No.

1), 349 Pa. 18; Search Estate, 160 Pa. Superior Ct. 488; Meyer Estate, 173 Pa. Superior Ct. 592.

In this connection it is fortunate for Frances Ball that none of her brothers or sisters wish to require any rental of her. They have taken what seems to be a fair, common sense, and brotherly and sisterly attitude.

For the reasons stated, the court makes the following adjudication, order and decree.

### Decree

Now, July 9, 1962, for the reasons stated in the foregoing opinion, it is hereby ordered, adjudged and decreed that:

1. The exception filed by Frances Ball to the first and final account of Frank W. Mascaro, as administrator c. t. a. d. b. n., of the estate of William F. Mascaro, deceased, is dismissed.

2. The claim filed with said administrator for taxes advanced by Frances Ball and/or her husband, Joseph Ball, on her behalf, is dismissed.

3. The balance in the hands of the administrator c. t. a. d. b. n., as shown by his first and final account, less any additional court costs which may be incurred in this proceeding and for filing a distribution schedule for approval by the court, shall be distributed as follows: One-eleventh of said net balance to each of the ten living children of William F. Mascaro, deceased, the share of Peter W. Mascaro to be paid to Dr. Robert E. Gardner, attorney-in-fact for Peter W. Mascaro, at the Springfield State Hospital in Sykesville, Maryland; and also one-eleventh of said net balance, the share which would be payable to Theresa Mascaro Bargerstock if she was now living, is to be paid to the clerk of the Orphans Court of Forest County, pending the right to said share being shown by the heirs of William O. Bargerstock, husband of Theresa Mascaro Bargerstock, who survived her and died intestate on July 6, 1948, or the Commonwealth of Pennsylvania.

4. A distribution schedule is to be filed showing the balance for distribution as shown by the account; the additional court costs, if any; and the names and addresses of the distributees above noted and the amount in dollars and cents payable to each. Such schedule is to be approved by the court.